ST. PAUL MERCURY INSURANCE COMPANY et al., Appellants,

v.

SUGARLAND INDUSTRIES, INC., Appellee.

No. 14593.

Court of Civil Appeals of Texas.

Houston.

June 10, 1965.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, Houston, for appellants.

Alvin M. Owsley, Jr., and John C. Held, Houston, and Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellee.

BELL, Chief Justice.

This is an appeal by Floyd West & Company, a partnership, and the individual partners, from an order overruling their pleas of privilege to be sued in the county of their residence. Floyd West & Company, a corporation, had its plea of privilege sustained and appellee complains of this.

The insurer filed no plea of privilege and is thus not involved in this appeal.

It appears that appellee sold some cotton seed for planting to A. J. Falco et al., farmers in Falls County, to be used for planting in 1959. Falco et al. later recovered judgment against appellee on the theory that appellee made misrepresentations that the germination rate of the seed was 80%, whereas it was actually much less. The Court of Civil Appeals at Waco affirmed the judgment, awarding $52,000.00 actual damages. Sugarland Industries, Inc., v. Falco et al., 360 S.W.2d 806, writ ref., n. r. e. Appellee carried a policy of liability insurance with St. Paul Mercury Insurance Company containing a form covering certain products liability. Appellee claimed that the claimed loss of Falco et al. was covered by the policy and demanded of the insurer that it defend the suit. Coverage was denied and defense was refused. Floyd West & Company, a partnership, through its agent, Imperial Agency at Sugarland, wrote the coverage. Floyd West & Company, a corporation, was formed by the persons who had been members of the partnership, but this occurred after the events giving rise to this case.

This suit was filed against the insurer to recover the amount of the judgment rendered against appellee and for the costs of defending the suit. Floyd West & Company, a corporation, was joined in this suit but the suit against it was conditioned on a holding that the loss was not covered by the policy. By an amended pleading the partnership and its members were made parties defendant. The pleading against the defendants other than the insurer, both in the petition and the controverting affidavit, is as follows:

"Alternatively, this is a suit against the agents of the liability insurance company for failing to provide insurance of the type required by the plaintiff, if it turns out no such coverage existed, when all through the crucial period involved in this case these agents of the liability insurance company were assuring your plaintiff that it had the necessary coverage * * * plaintiff says that the other defendant was guilty of breach of contract and also alternatively guilty of carelessness and negligence and misrepresentations of coverage which were relied upon, in failing to provide your plaintiff with insurance coverage which would reimburse it for the amounts expended. Not only did they so fail contractually and tortiously, but throughout the crucial period of time in question various of them, through their agents, reassured your plaintiff that it had the very coverage necessary, all to plaintiff's damage."

While appellee urged the suit was maintainable in Fort Bend County, under various subdivisions of Article 1995, Vernon's Ann.Tex.Civ.St., the case as it reaches us involves only whether suit was maintainable there under Subdivision 9a.

We reach the conclusion that under the testimony the suit was not maintainable in Fort Bend County against the defendants other than the insurer.

The testimony shows that for a number of years prior to October 1, 1958, the material policy year, appellee had had its insurance requirements written through the Imperial Agency. In about 1954 appellants appointed this agency as its agent. This relationship continued through the material period of time. During the material period the Imperial Agency was owned by Mr. I. H. Kempner who was also an officer in appellee company.

In 1956 Mr. Bob Wommack became the manager of the Imperial Agency. He obtained his employment upon recommendation of Mr. Olmstead who was connected with appellants. Unquestionably since the account of appellee was a big one, appellants were interested in having a competent

man on the ground to look after the account. They wanted to sell insurance and they wanted a satisfied customer. Undoubtedly, though there is no direct evidence to this effect, they would want their agent to become familiar with appellee's operations and see if there was additional coverage they might try to get appellee to obtain, if they sold such coverage. Mr. Wommack became acquainted with the operation. However, the coverage of appellee changed very little over the years and for the most part previous policies were renewed. Mr. Wommack did testify that a few changes were suggested to appellee and were accepted by it. However, Mr. Wommack testified there was never any discussion between him and representatives of appellee about coverage such as is now claimed. He did testify that when renewals came up he would go over the policies in force with the officers of the insured. In case of appellee it would be Mr. Stirl or Mr. James. Mr. Stirl was the officer of appellee handling insurance matters. When asked to be specific, the witness said as a usual thing they left it to him. He said, "Whatever I would suggest, why I can't recall everything being too much debate on it." The witness had suggested modifications in coverage and policy limits twice since 1956.

Other evidence shows that in addition to Mr. Stirl, an officer of appellee, being in charge of insurance, that each year appellee had its insurance coverage analyzed by an insurance consultant from Dallas.

Nowhere is there any evidence that anyone connected with appellee ever discussed this particular coverage with any agent of appellants. Nowhere is there evidence that appellee was relying on appellants to see to it that appellee had every possible coverage on every phase of its operation. Nor do we think there is any testimony from which such inference can reasonably be drawn.

Mr. James, one of the officers of the appellee, testified and he, in his testimony, makes no such claims. It is also to be noted that Mr. Stirl, an officer in appellee company, was not even called as a witness.

We have read the entire statement of facts and we fail to find any evidence from which it may be reasonably inferred that appellants had any duty to obtain coverage unless asked by appellee to do so. Nor do we find any duty by appellants to inform appellee that they do not have a particular coverage.

Apart from the absence of a breach of any duty owed by appellants to appellee, we find no evidence of negligence by appellants. The only testimony in the record shows that there was no such coverage written by any company in the United States. There is the bare indication that a witness had heard it might be available at the London market. The burden of proof to establish negligence is on appellee. It has wholly failed to introduce evidence raising any issue of negligence. We fail to see how there could be negligence that was the proximate cause of appellee's loss where the evidence fails to show availability of coverage but in fact shows it was not available.

We here pass no judgment on whether the policy issued to appellee shall be construed to encompass the claimed coverage. For purposes of disposing of this appeal, we merely assume it does not.

We have read all of appellee's authorities and we deem none of them controlling.

The judgment of the trial court overruling appellants' pleas of privilege is reversed and judgment is here rendered in favor of appellants sustaining such pleas.

The judgment sustaining the plea of privilege of Floyd West & Company, a corporation, is affirmed.